UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JENNIFER SHIRK,                           )
                                          )
                Plaintiff,                )
                                          )
v.                                        )   No. 1:21-cv-02395-JRS-MPB
                                          )
THE TRUSTEES OF INDIANA                   )
UNIVERSITY, ANNA LYNCH, JUSTIN            )
ZEMLYAK, and PETER ERMEY,                 )
                                          )
                Defendants.               )

**Order on Motion for Summary Judgment**

## I.     Introduction

This is an employment dispute.  Jennifer Shirk, who has OCD and PTSD, worked

as an "Online Instructional Designer" for Indiana University until—after a

contentious few years—she was fired in April 2021.  She sues her former employer

(and three of her supervisors) for disability discrimination, retaliation, and failure to

accommodate under the Rehabilitation Act and for retaliation under the FMLA.

Now before the Court is IU's Motion for Summary Judgment. (ECF No. 58.)

## II.    Legal Standard

The legal standard on summary judgment is well established:

> Summary judgment is appropriate "if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute
> of material fact exists 'if the evidence is such that a reasonable jury could
> return a verdict for the nonmoving party.'" *Skiba* [*v. Illinois Cent. R.R.
> Co.*, 884 F.3d 708, 717 (7th Cir. 2018)] (quoting *Anderson v. Liberty
> Lobby*, Inc., 477 U.S. 242, 248 [] (1986)). A theory "too divorced from the
> factual record" does not create a genuine issue of material fact. *Id.* at

721. "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020).

*Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021). The Court applies that standard here.

### III. Discussion

#### A. Reclassification

Shirk's job troubles began when she was refused a promotion. IU at the time classified its online learning staff on a "PA" scale, each level of which corresponded to certain pay grades, job duties, and responsibilities. "PA2" was for assistants, "PA3" was for individual contributors, and "PA4" was for first-level managers. Shirk's first position at IU was an internship in the fall of 2018. She was hired full-time shortly after, in October, so that she would have access to health benefits. (Lynch Decl. 2, ECF No. 58-1.) She began at PA2. After five months (in February 2019), she sought, and was granted, "reclassification" to PA3. (*Id.*) Reclassification is IU jargon for promotion.

In September 2019, Shirk again sought promotion, this time to PA4. After making her request, she took FMLA leave from October 2019 to January 2020. Her promotion request was sent up the management chain in her absence. Initially she had the support of her first two levels of management, but eventually her request stalled. (Zemlyak Decl. 1, ECF No. 58-4.) COVID hit. IU implemented a university-wide hiring freeze, subject to certain exceptions, and Shirk's request was denied in April 2020. (Lynch Decl. 2, ECF No. 58-1.)

2

Shirk claims that the denial of her promotion request was unlawful discrimination under the Rehabilitation Act and unlawful retaliation under the FMLA.

The elements of discrimination and retaliation claims are similar:

> To prove a claim of disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) [s]he is disabled, (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) [s]he suffered an adverse job action "solely by reason of . . . h[er] disability." 29 U.S.C. § 794(a); *see also Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016). The "solely by reason of" causation standard is stricter than the causation standard in Title I of the ADA, which the Rehabilitation Act otherwise incorporates for its liability standards. 29 U.S.C. § 794(d); *see also Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021.

*Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022) (ellipses in original).  And to prove a retaliation claim under the FMLA the plaintiff must show

> (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). To succeed on her retaliation claim, [the plaintiff] does not need to prove that "retaliation was the only reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741–42 (7th Cir. 2008).

*Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022).  For both claims, then, Shirk must establish that the denial of her promotion was caused by her protected status or activity.  At the summary judgment stage, her evidence must be sufficient for a reasonable juror to conclude that her disability was the "sole" reason or that her use of FMLA leave was a "substantial or motivating" reason for denying her promotion.

No reasonable juror could so conclude.  Shirk wanted promotion from PA3 to

PA4—from individual contributor to manager—only a year after she was first hired

on as PA2 assistant.  Shirk thought her work merited promotion.  IU had no policy

entitling Shirk to a promotion; there was no open PA4 position to which she applied;

no other employees were promoted over her.[1]   IU denied her request without

mentioning her disability or her FMLA leave.  It said her promotion was not so critical

as to deserve an exception from the hiring freeze.

---

[1] The parties apparently agree that denying Shirk's promotion request was an adverse job
action.  While it is true as a general proposition that "failure to promote can be an adverse
action giving rise to liability," *Hill v. Potter*, 625 F.3d 998, 1003 (7th Cir. 2010) (citing *Jackson
v. County of Racine*, 474 F.3d 493, 501 (7th Cir.2007)), the Court thinks the facts here are
distinguishable from the main line of failure to promote cases.  Shirk was not turned down
for an open position; she was not entitled to promotion as a matter of IU policy; no cohort of
employees around her was promoted above her head.  If Shirk's case is cognizable, then any
employee in a protected class can unilaterally apply for a promotion, and, upon being denied,
bring a discrimination case that survives a motion to dismiss.  The Seventh Circuit rejects
that outcome.  *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (quoting *Williams
v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)) ("[N]ot everything that makes
an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial
employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form
the basis of a discrimination suit.'").
    Pre-*Ortiz*, failure to promote cases included as an element that the plaintiff "applied and
was qualified for a job for which the employer was seeking applicants," *see, e.g.*, *Malacara v.
City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000), or at least that " the position was granted
to a person outside the protected class," *see, e.g.*, *Jordan v. City of Gary, Ind.*, 396 F.3d 825,
833 (7th Cir. 2005), which equally implies that there was an open position.  Those elements
bar Shirk-type claims. Post-*Ortiz*, "evidence must be considered as a whole," and the question
"is simply whether the evidence would permit a reasonable factfinder to conclude that the
plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or
other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th
Cir. 2016).  There is thus no single test to decide whether a failure to promote claim is
cognizable.   Instead, the test is reasonableness—and not every failure to promote is
reasonably considered an adverse action.   The Court thinks that *Ortiz's* welcome
simplification of the discrimination standard will necessarily affect the analysis of which
"adverse actions" are cognizable. "Adverse action," after all, is simply shorthand for "the sort
of discrimination prohibited by statute."

The evidence shows that Shirk's promotion request was wishful and premature. (Anna Lynch, the manager who denied Shirk's request, promised Shirk advice and opportunities to position her for later promotion—support that Shirk interpreted as hostile and belittling. (Shirk-Ermey Email, ECF No. 67-36.)) There is no evidence linking Shirk's disability or FMLA leave to the decision.

Shirk argues that a rational juror could nonetheless infer discrimination or retaliation, because her coworker Erin Tock was promoted from PA2 to PA3 during the same time. That is not useful evidence. Shirk wanted promotion from PA3 to PA4. Tock's promotion suggests at best that IU was willing to consider promotions, even during the hiring freeze, under the right circumstances. It does not show that IU would have promoted Shirk from PA3 to PA4 had she not been disabled or had she not used FMLA leave.

Shirk also argues that a rational juror could infer discrimination or retaliation from Anna Lynch's "hostility" in their meetings to discuss Shirk's promotion or from testimony that Lynch was "angry on at least one occasion when Shirk took FMLA leave." (Pl.'s Resp. 33–34, ECF No. 69.) But the evidence underlying those arguments does not support any inference of discrimination or retaliation.

The evidence of Lynch's "hostility" is Shirk's testimony. Shirk testifies that at an April 23, 2020, meeting Lynch "interrupted [her] frequently" and "told [her] that anyone can do the work that [she was] doing." (Shirk Dep. Tr. 28:9-29:4, ECF No. 67-1 at 21-22.) Shirk also testifies that Lynch had a "combative, aggressive kind of tone." (*Id.* 60:2, ECF No. 67-1.) That evidence, even if credible to a rational juror, does not

5

support an inference of discrimination or retaliation.  Having a rude or dismissive boss is not actionable.  Shirk does not testify that Lynch made any comments about her FMLA leave or her disability; she testifies that the meeting involved Lynch dismissing Shirk's promotion request as not in "the best interest of the university." (*Id.*)  And Shirk's contemporaneous email summary of the meeting is consistent with that testimony: it reveals that Shirk understood the meeting as discussing the department's business requirements and Shirk's chances for future career development, not Shirk's disability or FMLA leave.  (Shirk-Lynch Email, April 23, 2020, ECF No. 58-11.)

Lynch's supposed anger rests on deposition testimony by HR person Jim Peltz that Lynch was "pretty much exclusively concerned with the way that Jennifer had communicated" her decision to take FMLA leave.  (Peltz Dep. Tr. 96:17-98:17, ECF No. 67-4 at 32-34.)  Although Shirk's briefing is obfuscatory on the point, it seems from context that the testimony concerns a September 18, 2020, interaction, well after the adverse action in question here.  (*Compare* "I let them know . . . that she must have had to leave quickly or it was an urgent situation," Peltz Dep. 97:11, ECF No. 67-4, *with* "it does seem this was an urgent/emergency medical issue," Peltz-Lynch Email, September 18, 2020, ECF No. 67-33.)  Shirk apparently told a client she would be out on FMLA leave without also telling her supervisors; the client emailed Lynch to ask about project staffing in Shirk's absence; and Lynch emailed Peltz "I'm not happy to hear this from a client rather than from anyone on my team" and asking for information.  Thus the testimony aligns with the documentary

6

evidence to show that the underlying FMLA leave was not the reason Lynch was angry; Lynch was angry with the way Shirk communicated her decision to take leave. The evidence, then, far from showing Lynch to have harbored retaliatory animus in spring of 2020, does not even show Lynch to have harbored such in the fall.

In sum, IU is entitled to summary judgment in its favor on the claims relating to Shirk's reclassification. Shirk presents no evidence that could convince a reasonable juror that discrimination or retaliation was a "substantial" reason, much less the "sole" reason, for IU to deny her promotion.

### B. Accommodation

In December 2020 Shirk requested accommodations for her disabilities. Emily Kempski, an accommodation specialist, reviewed the request and provided a draft accommodation letter on January 7, 2021. Shirk's immediate supervisor, Peter Ermey, shared the draft letter up the chain of command. On January 8, 2021, Shirk's four supervisors[2] met to discuss the requested accommodations. On February 22, 2021, Shirk was granted all but one of her requested accommodations: she was allowed to continue remote work, to have flexible hours, to have project expectations shared in writing on a collaborative document, to have additional clarification about projects when necessary, to have one business day's notice, when practicable, before any meeting with higher-level supervisors, and to have a written agenda, when practicable, for any such meeting. (ECF No. 67-22.) Shirk was not allowed to have a

---

[2] Which, apparently, go all the way up the org chart to the Director of Teaching and Learning Technologies, who is himself only three levels below the University president.

support person with her at all meetings. Instead, Shirk was allowed to request a support person on a meeting-by-meeting basis, which service was available to all IU employees even without accommodation. (ECF No. 67-28.) Shirk sought reconsideration of her support-person accommodation, but on March 3, 2021, IU denied the support-person request again for the same reasons it gave before: that a mandatory support-person accommodation would unduly burden the ordinary functioning of the department. (ECF No. 67-30.) Shirk also sought leave to record departmental meetings. IU has no policy against recording meetings, though, so leave to record was not necessary as an accommodation. (*Id.*)

To succeed on her failure to accommodate claim, Shirk must show, "(1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability." *Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021) (citing *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)). These elements are "[hers] to prove." *Vargas v. DeJoy*, 980 F.3d 1184, 1190 (7th Cir. 2020) (citing *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013)). For Shirk to show she was not reasonably accommodated, she must "show that the accommodation [she] seeks is reasonable on its face." *Majors*, 714 F.3d at 535 (quoting *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir.2002)).

Here, Shirk was granted the accommodations she requested. The exception—that IU provide her with a support person for all her meetings—was denied as a formal accommodation but remained available to Shirk on an as-needed basis through IU's

employee services.   Thus the only way for Shirk to prevail on her failure to accommodate claim is to show that it is reasonable to require, rather than simply permit, a support person at Shirk's meetings with management.   This she has not attempted to do.   There is no evidence in the record to support the contention that a support person is a "reasonable" accommodation—on its face it is not[3]—or to support the contention that optional, rather than mandatory, support is deficient.   The stark fact is that Shirk *was* accommodated.   IU gave her effectively everything she asked. The deviations from her ideal accommodation are minor and of no legal significance. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008) (quoting *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir.1996)) ("An employer is not obligated to provide an employee the accommodation she requests or prefers[;] the employer need only provide some reasonable accommodation.").   And when reasonable accommodation is given, procedural defects in the accommodation process are irrelevant.   *Sansone v. Brennan*, 917 F.3d 975, 980 (7th Cir. 2019) (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000)).

---

[3] At some point the "reasonable accommodation" inquiry blurs into the "qualified person" inquiry.   *See* 29 U.S.C. § 794 (prohibiting discrimination against an "otherwise qualified individual").   A person who needs 24-hour notice of meetings, written agendas, clear-cut project guidelines, support persons, and recording of meetings is perhaps not qualified for professional office jobs at all.   The Seventh Circuit consistently holds that the "employer is not obligated to change the essential functions of a job to accommodate an employee." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004).   And while it may be easier to define "essential functions" for manual than for knowledge work, it ought to be possible to say that certain functions—self-direction, tolerance of ambiguity, interaction with coworkers and supervisors—are so essential to the job that no accommodation is obligatory.

C. Termination

Shirk remained dissatisfied.  On January 22, 2021, while the accommodation process was ongoing, she filed a formal complaint with one of IU's HR departments. On January 25 she filed a charge of discrimination with the EEOC.  Sometime before the end of February,[4] according to the testimony of HR person Jim Peltz, IU searched, or intended to search, Shirk's email to see if she was "working enough."  (Peltz Dep. Tr. 43:11-46:10, ECF No. 67-4 at 15-18.)  As noted above, Shirk's accommodations were granted in February 2021.  Shirk filed an amended charge with the EEOC in March.

Shirk's job problems came to a head on Thursday, April 15, 2021.  One of the projects she was working on reached an impasse—who would come up with the money—and, after an emergency meeting, her supervisor decided to ask a higher-up for help.  Shirk, though, before that could be arranged, emailed the higher-up herself. (ECF No. 67-10.)  Shirk told her immediate supervisor, Peter Ermey, about her supervisor-bypassing email.  Ermey told his supervisor, Justin Zemlyak.  Zemlyak responded "that is completely out of bounds for her to do. [S]he should not be doing that."  (Ermey-Zemlyak Chat, ECF No. 58-34.)  Ermey asked Shirk for the email. (Ermey-Shirk Chat, ECF No. 58-35.)  Shirk complied under protest.

On Friday, Shirk again emailed two higher-ups, casting blame on her supervisors for their handling of the funding issue and asking for further guidance.  (ECF No. 58-36.)  Ermey asked for that email as well.  (ECF No. 58-35.)  Shirk, after sending yet

---

[4] There is no date given.  Peltz resigned in February 2021, so it must have been before that.

another email to the higher-ups, (ECF No. 58-36), complied.  In the last email, Shirk

wrote, "I fear that Peter [Ermey] will use this email to further retaliate against me

for my ongoing efforts to advocate for my right to work in an environment that is free

of discrimination, harassment, and retaliation."  (*Id.*)  She also wrote, "I am not

comfortable with Peter hearing this information about his performance from me."

(*Id.*)

On Monday, Shirk met with Zemlyak and an HR person, Kris Ying, to discuss

Shirk's emails.  That Friday, April 23, 2021, Shirk was fired.  The reason given in the

accompanying letter read, "[o]n April 15th and April 16th, 2021, you sent an email

which included a key partner in the Office of Online Education (OOE) that 1)

discussed private matters not relevant to services being provided OOE and 2) shared

disparaging personal opinions of Learning Technologies leadership to OOE that

threatens client relationships."  (ECF No. 67-39.)

Shirk claims that her termination was unlawful discrimination and retaliation

under the Rehabilitation Act and unlawful retaliation under the FMLA.

The Court set out the law of Rehabilitation Act discrimination and FMLA

retaliation in Section III.A, above.  In short, "to prove a claim of disability

discrimination under the Rehabilitation Act, a plaintiff must show that: (1) [s]he is

disabled, (2) [s]he is otherwise qualified to perform the essential functions of the job

with or without reasonable accommodation, and (3) [s]he suffered an adverse job

action "solely by reason of . . . h[er] disability." *Swain*, 41 F.4th at 899 (ellipses in

original).  To succeed on a claim of retaliation under the Rehabilitation Act, Shirk

must show that "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (quoting *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)). And to prove a retaliation claim under the FMLA the plaintiff must show "(1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Anderson v. Nations Lending*, 27 F.4th at 1307 (quoting *Freelain*, 888 F.3d at 901).

To succeed on her claims, then, Shirk must establish that her termination was caused by her protected status or activity. At the summary judgment stage, her evidence must be sufficient for a reasonable juror to conclude that her disability or protected activity was the "sole" reason or that her use of FMLA leave was a "substantial or motivating" reason for her termination.

No reasonable juror could. Shirk introduces no evidence to connect the termination decision with her protected class or activity. She sent emails to her boss' boss' boss' boss' boss panicking about a minor issue and denigrating her coworkers. She got fired for it.

Shirk's disability and protected activities were not mentioned. Shirk thinks that her evidence can nonetheless create a reasonable inference of unlawful discrimination or retaliation because she included claims of discrimination and retaliation in the last of her several emails. But such inferences are not reasonable. The mere mention of discrimination does not pull a blanket of immunity over the

entirety of Shirk's conduct—otherwise any employee could shield even the most outlandish behavior by invoking discrimination at the end of it.  *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 20-2910, 2022 WL 16948602, at \*2 (7th Cir. Nov. 15, 2022) (quoting *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 17-CV-36-JDP, 2020 WL 5304493, at \*1 (W.D. Wis. Sept. 4, 2020)) (anti-discrimination law "does not 'immunize[ ] [the employee] from the consequences of her grossly unprofessional conduct.' Put differently, the University can lawfully discipline her for expressing a Title VII grievance in a way that egregiously violates neutral professional rules or norms.").  Even if a reasonable juror could infer from Shirk's evidence some tincture of retaliatory motive against Shirk's last email, it would concern the Rehabilitation Act claims only, not the FMLA, and it could not possibly be the "sole" reason for her firing as required by the Rehabilitation Act.

D.  Hostile Work Environment

Shirk's final claim is that she suffered from a hostile work environment.  To succeed on a hostile work environment claim,

> A plaintiff must demonstrate that (1) she was subject to unwelcome harassment; (2) the harassment was based on disability or age or another protected category; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. . . . Insults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance.

*Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (internal citations omitted).

Here, Shirk gives no evidence of a hostile work environment other than her own

subjective feelings.  Those feelings are not enough.  There is simply no evidence of

hostility or abusiveness directed at Shirk,[5] much less of hostility and abusiveness

based on Shirk's disability.  *See id.* ("None of the comments she alleges occurred have

anything to do with PTSD or any other disability.").

## IV.   Conclusion

> Although there are many tests and rubrics for viewing discrimination
> claims, it is important to recall that, at the end of the day they are all
> merely convenient ways to organize our thoughts as we answer the only
> question that matters: when looking at the evidence as a whole, 'whether
> the evidence would permit a reasonable factfinder to conclude that the
> plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused
> the discharge or other adverse employment action.'

*Brooks*, 39 F.4th at 433 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th

Cir. 2016)).

Here, Shirk's job did not turn out the way she hoped.  But though she may "have

not been in the habit of brooking disappointment," JANE AUSTEN, PRIDE AND

PREJUDICE 438 (Project Gutenberg, 2022), no reasonable juror could find that IU's

treatment of her was unlawful.

IU's Motion for Summary Judgment, (ECF No. 58), is **granted.**

Final judgment shall enter separately.

**SO ORDERED.**

Date: 11/29/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

---

[5] *See* Fed. R. Civ. P. 11(b)(3) (requiring that "factual contentions have evidentiary support").

14

Distribution by CM/ECF to registered counsel of record.